# United States Court of Appeals for the Federal Circuit

———————————

**AMANDA JANE WOLFE, PETER BOERSCHINGER,**
*Claimants-Appellees*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant*

———————————

2020-1958

———————————

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-6091, Judge Joseph L. Falvey, Jr., Judge Michael P. Allen, Judge William S. Greenberg.

———————————

Decided: March 17, 2022

———————————

SEAN CHRISTOPHER GRIFFIN, Sidley Austin LLP, Washington, DC, argued for claimants-appellees. Also represented by MARK BRUCE BLOCKER, KARA L. MCCALL, Chicago, IL; RENEE A. BURBANK, BARTON FRANK STICHMAN, I, National Veterans Legal Services Program, Washington, DC.

ERIC P. BRUSKIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellant. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR.;

SUSAN BLAUERT, UduakAbasi HENRY, JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

MELANIE L. BOSTWICK, Orrick, Herrington & Sutcliffe LLP, Washington, DC, for amici curiae The American Legion, Disabled American Veterans, Paralyzed Veterans of America, Veterans of Foreign Wars. Also represented by BENJAMIN PAUL CHAGNON; ELIZABETH MOULTON, Menlo Park, CA.

JILLIAN BERNER, Veterans Legal Support Center and Clinic, School of Law, University of Illinois Chicago, Chicago, IL, for amicus curiae National Law School Veterans Clinic Consortium.

MICHAEL B. MILLER, Morrison & Foerster LLP, New York, NY, for amici curiae Erwin Chemerinsky, Heather Elliott, Richard D. Freer, Paul Ryan Gugliuzza, Helen Hershkoff, Andrew Stuart Pollis, Cassandra Burke Robertson, Adam Steinman, Howard M. Wasserman, Adam Zimmerman.

_____

Before DYK, REYNA, and STOLL, *Circuit Judges.*

DYK, *Circuit Judge.*

This case involves the scope of the Department of Veterans Affairs' ("VA's") reimbursement of the cost of hospital visits to veterans enrolled in the VA health care system. The statute bars reimbursement for "any copayment or similar payment." 38 U.S.C. § 1725(c)(4)(D). The question is whether deductibles and coinsurance are encompassed within the term "similar payments."

The Secretary of the VA ("Secretary") appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") granting a petition for a writ of mandamus (1) invalidating a VA regulation prohibiting the

reimbursement of deductibles and coinsurance for being within the category of "similar payments," (2) requiring the VA to readjudicate claims denied under the invalidated regulation, and (3) certifying a class of "[a]ll claimants whose claims for reimbursement of emergency medical expenses incurred at non-VA facilities VA has already denied or will deny, in whole or in part, on the ground that the expenses are part of the deductible or coinsurance payments for which the veteran was responsible," J.A. 28.

Because deductibles are excluded from reimbursement under the correct interpretation of the statute and other adequate remedies were available with respect to coinsurance, mandamus was inappropriate. We reverse.

BACKGROUND

I

The VA provides health care to nine million enrolled veterans through its Veterans Health Administration, the largest health care system in the country. *Veterans Health Administration*, U.S. Dep't of Veterans Affs., https://www.va.gov/health (last visited Feb. 22, 2022). Enrollment in the VA health care system is determined by statute. *See* 38 U.S.C. § 1705. For those who are enrolled, and subject to certain other criteria, the VA provides free hospital care. *See* 38 U.S.C. § 1710(a), (e); 38 C.F.R. § 17.108(d), (e). Enrolled veterans with other health care coverage, such as private insurance, Medicare, Medicaid, or TRICARE, may choose to use those sources of coverage to supplement their VA health care benefits. *VA and Other Health Insurance*, U.S. Dep't of Veterans Affs., https://www.va.gov/healthbenefits/resources/publications/hbco/hbco_va_other_insurance.asp (last visited Feb. 22, 2022). In emergencies, enrolled veterans are entitled to obtain medical care at the nearest hospital emergency department and to seek reimbursement from the VA for the cost of treatment, with some exceptions. *Emergency Medical Care*, U.S. Dep't of Veterans Affs.,

https://www.va.gov/COMMUNITYCARE/programs/vetera
ns/Emergency_Care.asp (last visited Feb. 22, 2022).

Simple on its face, the implementation of this approach
was complex. Before 1999, the VA had limited authority to
pay for private, non-VA emergency care for veterans. In
general, it could only reimburse for emergency treatment
relating to a service-connected condition or disability. 38
U.S.C. §§ 1703(a)(3), 1728 (1999); *see also* H.R. Rep. No.
106–470, at 63 (1999) (Conf. Rep.). Congress expanded the
VA's authority in 1999 by adding § 1725 to title 38 of the
U.S. Code in the Veterans Millennium Health Care and
Benefits Act. Pub. L. No. 106-117, § 111, 113 Stat. 1545,
1553 (1999) (effective May 29, 2000).

Section 1725 as originally enacted directed the VA to
reimburse veterans enrolled in the VA healthcare system
for "the reasonable value of emergency treatment fur-
nished the veteran in a non-[VA] facility" if they, among
other conditions, (1) had "no entitlement to care or services
under a health-plan contract" ("the contract provision")
and (2) had "no other contractual or legal recourse against
a third party that would, in whole or in part, extinguish"
liability to the provider ("the third-party provision").
§ 1725(a)(1), (b)(3)(B)–(C) (1999). These somewhat over-
lapping limitations reflected Congress's intent to contain
"the significant potential cost" of reimbursement and en-
sure "that VA truly [is] a payer of last resort." H.R. Rep.
No. 106-237, at 39 (1999). Congress expected VA to "act
aggressively" to protect "scarce VA medical care funds" by
"ascertain[ing] before authorizing any payment under this
section that a veteran has no medical insurance whatso-
ever or any other medical coverage" and that "the veteran
. . . has exhausted all other possible claims and remedies
reasonably available against a third party which may be
liable for payment of the emergency care." *Id.* Section 1725
directed the Secretary to promulgate regulations to "estab-
lish the maximum amount payable" and "delineate the

circumstances under which such payments may be made."
§ 1725(c)(1)(A)–(B).

Under the provisions of the 1999 legislation, veterans
with even minimal health insurance coverage, such as
through a state-mandated automobile insurance policy,
might wind up responsible for essentially the full cost of
emergency treatment. H.R. Rep. No. 111-55, at 2–3 (2009).
Congress addressed this problem in 2010 by revising
§ 1725 in the Emergency Care Fairness Act of 2010
("ECFA"). Pub. L. No. 111-137, § 1, 123 Stat. 3495 (2010)
(effective Feb. 1, 2010). The ECFA struck "or in part" from
the third-party provision such that reimbursement was
prohibited if the veteran had "other contract[] or legal re-
course against a third party that would, *in whole*, extin-
guish" liability to the provider. § 1725(b)(3)(C) (emphasis
added). The ECFA also added a new subsection to § 1725(c)
with limitations on reimbursement, including a provision
providing that "[t]he Secretary may not reimburse a vet-
eran under this section for any copayment or similar pay-
ment that the veteran owes the third party or for which the
veteran is responsible under a health-plan contract" ("the
copayment provision"). § 1725(c)(4)(D).[1]

The statute does not define "copayment" or "similar
payment," § 1725(f), but the parties agree that there are
three cost-sharing mechanisms commonly used in the
health insurance industry:

- A copayment is a "fixed amount that a pa-
  tient pays to a healthcare provider according
  to the terms of the patient's health plan."

---

[1]    The ECFA also struck a provision that included
state-mandated automobile insurance under the definition
of "health-plan contract." *Compare* § 1725(f)(3)(E) (2014),
*with* § 1725(f)(2)(E) (2006).

> *Copayment*, Black's Law Dictionary (11th ed. 2019).

- A deductible is "the portion of the loss to be borne by the insured before the insurer becomes liable for payment." *Deductible*, Black's Law Dictionary (11th ed. 2019).

- "Coinsurance" is "health insurance in which the insured is required to pay a fixed percentage of the cost of medical expenses after the deductible has been paid and the insurer pays the remaining expenses." *Coinsurance*, Merriam-Webster, https://www.merriam-webster.com/dictionary/coinsurance (last visited Feb. 4, 2022).

After Congress passed the ECFA in 2010, the VA revised its regulations, differentiating between situations involving third-party liability and those involving health-plan contracts despite the seeming overlap between the two. It struck "or in part" from the regulation corresponding to the third-party provision, 38 C.F.R. § 17.1002(g), and added a regulation that the VA "will not reimburse a claimant . . . for any deductible, copayment or similar payment that the veteran owes a third party," 38 C.F.R. § 17.1005(f). *See* Payment or Reimbursement for Emergency Services for Nonservice-Connected Conditions in Non-VA Facilities, 77 Fed. Reg. 23615, 23,615–16, 23,618 (Apr. 20, 2012). However, the VA did not change the contract provision in the regulation, which continued to state that reimbursement required "[t]he veteran has no coverage under a health-plan contract for payment or reimbursement, in whole *or in part*, for the emergency treatment." 38 C.F.R. § 17.1002(f) (2012) (emphasis added) ("the contract regulation"). The VA concluded that the ECFA did not alter the contract provision and that removing "or in part" from the corresponding regulation "would treat a veteran with some coverage under a health-plan contract in the same manner

as one without coverage." Payment or Reimbursement, 77 Fed. Reg. at 23,616.

## II

In *Staab v. McDonald*, 28 Vet. App. 50 (2016), the Veterans Court considered the statute, as amended in 2010 by the ECFA, and the 2012 regulations. There, a veteran incurred emergency expenses at a non-VA hospital and sought reimbursement for the portion not covered by Medicare. *Id.* at 52. The Board of Veterans' Appeals ("Board") denied his claim as a matter of law under the contract regulation because Medicare covered some, but not all, of the veteran's costs. *Id.* The Veterans Court reversed the Board's determination, concluding that the regulation was invalid. *Id.* at 56. The Veterans Court did not explain the cost-sharing mechanisms involved. *Id.* at 52–53. But interpreting the language and legislative history of the ECFA, the Veterans Court found that "Congress intended that veterans be reimbursed [aside from copayments] for the portion of their emergency medical costs that is not covered by a third party insurer and for which they are otherwise personally liable." *Id.* at 55. The Secretary appealed *Staab* to this court but voluntarily withdrew the appeal. J.A. 7.

Following *Staab*, the VA revised the contract regulation to allow reimbursement when a veteran "does not have coverage under a health-plan contract *that would fully extinguish* the medical liability for the emergency treatment." 38 C.F.R. § 17.1002(f) (emphasis added); *see also* Reimbursement for Medical Treatment, 83 Fed. Reg. 974, 974–75 (Jan. 9, 2018). At the same time, the VA added coinsurance to deductibles and copayments as payments that would not be reimbursed. 38 C.F.R. § 17.1005(a)(5) (hereinafter, "the similar payments regulation"); *see also* Reimbursement for Medical Treatment, 83 Fed. Reg. at 976–77.

### III

In September 2016, Amanda Wolfe, who was enrolled in VA health care, obtained emergency treatment at a non-VA health care facility, incurring expenses of $22,348.25. Her employer-sponsored healthcare contract covered most of the expenses, but she was responsible for a copayment of $202.93 and coinsurance of $2,354.41. The VA denied reimbursement of these expenses in February 2018 because "patient responsibility (deductible, coinsurance, co-payment) [is] not covered." J.A. 199. In July 2018, Ms. Wolfe filed a Notice of Disagreement ("NOD"), a predicate to an appeal to the Board of Veterans' Appeals. In October 2018, rather than await the outcome of her appeal, Ms. Wolfe filed a mandamus petition at the Veterans Court seeking class relief invalidating the similar payments regulation and ordering "the Secretary to reimburse veterans for co-insurance and deductibles . . . incurred by veterans in seeking emergency medical treatment at a non-VA hospital[] and . . . not covered by the veteran's health insurance carrier." J.A. 54. While it appears that Ms. Wolfe did not herself have an issue as to deductibles, she pursued a ruling as to deductibles on behalf of the class.

In September 2019, a three-judge panel of the Veterans Court certified Ms. Wolfe's requested class and granted her petition. On the merits, a majority of the panel determined (1) that the similar payments regulation was inconsistent with the *Staab* decision's interpretation of § 1725, and (2) that deductibles and coinsurance are not similar to copayments. The majority reasoned that "[a] deductible is not 'similar' to a copayment because, though it is fixed, it is not a relatively small fee" and that "coinsurance [is not] 'similar' to a copayment because coinsurance is neither a relatively small nor a fixed fee; it's a relatively large and variable fee based on a percentage." J.A. 33. The majority further determined that Ms. Wolfe lacked adequate alternative remedies because "disputing the regulation's validity within the administrative appeals process amounts to

'a useless act' and would be futile because the Board doesn't have jurisdiction to invalidate the regulation." J.A. 34. Judge Falvey dissented, noting (1) that granting Ms. Wolfe's requested relief would "thwart, not aid [the Veterans Court's] appellate jurisdiction" because it "could not lead to a final Board decision reviewable by [the Veterans Court], and would, in fact, abrogate the need for such a decision," (2) that Ms. Wolfe failed to show she was clearly and indisputably correct in her interpretation of the statute, and (3) that Ms. Wolfe had an adequate remedy by appeal.

The Secretary appeals. We have jurisdiction under 38 U.S.C. § 7292(a), (c).

## DISCUSSION

In reviewing decisions from the Veterans Court, this court "shall . . . decide all relevant questions of law, including interpreting constitutional and statutory provisions" but "may not review [] a challenge to a factual determination, or [] a challenge to a law or regulation as applied to the facts of a particular case." § 7292(d). We have "jurisdiction to review the [Veteran Court's] decision whether to grant a mandamus petition that raises a non-frivolous legal question," and to determine "whether the petitioner has satisfied the legal standard for issuing the writ." *Beasley v. Shinseki*, 709 F.3d 1154, 1158 (Fed. Cir. 2013).

The All Writs Act authorizes "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. A writ of mandamus may issue only when three conditions are satisfied: (1) the petitioner must show a "clear and indisputable" right to issuance of the writ under the relevant substantive law, (2) the petitioner must have "no other adequate means" to attain the desired relief, and (3) "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v.*

*U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citations omitted); *see also Bankers Life & Cas. Co. v. Holland*, 436 U.S. 379, 384–85 (1953).

## I

We first consider whether, under the correct interpretation of § 1725(c)(4)(D), Ms. Wolfe has a "clear and indisputable" right. The statute provides that the "Secretary may not reimburse a veteran under this section for any copayment or similar payment." § 1725(c)(4)(D). Ms. Wolfe's right turns on whether deductibles and coinsurance are "similar payments" to copayments under the statute. The similar payments regulation interprets "similar payments" as including both deductibles and coinsurance. 38 C.F.R. § 17.1005(a)(5) ("VA will not reimburse a veteran . . . for any copayment, deductible, coinsurance, or similar payment that the veteran owes the third party or is obligated to pay under a health-plan contract."). For reasons set out below, we conclude that deductibles are similar to copayments and are excluded from reimbursement, but coinsurance is not similar and is not excluded.

It is a "fundamental canon of statutory construction" that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning[] . . . at the time Congress enacted the statute." *Perrin v. United States*, 444 U.S. 37, 42 (1979). The presumption against surplusage additionally provides that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citing 2A Norman J. Singer, *Statutes and Statutory Construction* § 46.06, at 181–86 (rev. 6th ed. 2000)).

To resolve this issue, we first need to address the effect of the deletion of the "or in part" language from the third-party provision, given the significance that Ms. Wolfe attributes to that statutory amendment. As noted earlier, before the enactment of the ECFA in 2010, the statute

required as conditions of reimbursement that a veteran have "no entitlement to care or services under a health-plan contract" and also "no other contractual or legal recourse against a third party that would, in whole or in part, extinguish" liability to the provider. § 1725(b)(3)(B)–(C) (1999). In 2010, Congress deleted the "or in part" language from the third-party provision but left unchanged the "no entitlement" language in the contract provision, creating a potential ambiguity. § 1725(b)(3)(B)–(C). Nonetheless, in deleting the "or in part" language from the third-party provision and adding the "copayment or similar payments" provision, which equally limits the scope of both the contract and third-party provisions, Congress clearly intended for veterans with partial contract coverage not to be disqualified from reimbursement unless the payments are "copayment[s] or similar payments." The government does not argue otherwise, and we think this is the correct interpretation.

But that does not resolve the question whether deductibles and coinsurance are "similar payments" to copayments. We agree with the government that "similar payments" necessarily means that some payments that are not copayments are "similar payments." The arguments by the Veterans Court and Ms. Wolfe that "similar payments" was simply meant to include copayments when the provider used different language to describe them are untenable. *See, e.g.*, *Rousey v. Jacoway*, 544 U.S. 320, 324, 329 (2005) (holding that "[t]o be 'similar,' an IRA must be like, though not identical to, the specific plans or contracts listed in [the statute], and consequently must share characteristics common to the listed plans or contracts" under a Bankruptcy Code provision allowing debtors to exempt "a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of . . . age" from estate).

But equally untenable is the government's argument that both deductibles and coinsurance are "similar

payments." If this were so, the ECFA amendments allowing veterans with partial coverage to be reimbursed would have little meaning since the similar payments language would bar all forms of cost-sharing. The government suggests that its interpretation does not render the partial coverage exclusions inoperative because the statutory effects of "similar payments" would not bar reimbursement to veterans who have hit annual or lifetime policy limits on covered costs. VA Br. at 47. But shortly after passing the ECFA, Congress passed the Affordable Care Act ("ACA"), which generally prohibited annual and lifetime caps on covered costs. *See* 42 U.S.C. § 300gg-11. The ACA had already passed the Senate when Congress enacted the ECFA amendments in 2010. It seems unlikely that Congress, in eliminating partial coverage from the third-party provision, was concerned with policy limits in view of its impending decision to eliminate such limits.[2]

The Secretary, citing to the ACA, also argues that the similar payments regulation is a reasonable reflection of "the common understanding of which health plan expenses are 'similar' to copayments." VA Br. at 46. The ACA defines "cost-sharing" to include "deductibles, coinsurance, copayments, or similar charges" as well as "any other expenditure required of an insured individual which is [paid

---

[2]    The Secretary also mentions that veterans with short-term limited duration ("STLD") insurance may incur reimbursable costs. It is unclear how the existence of STLD insurance should inform the meaning of "similar payments" under the statute, and the Secretary does not explain the relationship. *See* VA Br. at 47; VA Reply Br. at 21; *see also* Requirements for the Group Health Insurance Market, 69 Fed. Reg. 78,783 (Dec. 30, 2004) (defining STLD insurance plans); *Ass'n for Cmty. Affiliated Plans v. U.S. Dep't of Treasury*, 966 F.3d 782, 786 (D.C. Cir. 2020) (discussing higher deductibles associated with STLD insurance plans).

by the beneficiary for medical care to the extent such amounts are not compensated for by insurance or otherwise] with respect to essential health benefits covered under the plan," excluding "premiums, balance billing amounts for non-network providers, or spending for non-covered services."   42 U.S.C. § 18022(c)(3); *see also* 26 U.S.C. § 223(d)(2)(A).  We do not find this persuasive.  The ACA definition highlights that copayments, deductibles, and coinsurance are all cost-sharing mechanisms for purposes of introducing annual limits on cost-sharing, *see* § 18022(c)(1), but it does not answer the question of what is a "similar payment" to a copayment for purposes of the ECFA.

Having considered the interpretations offered by the Veterans Court and advanced by the parties, we conclude that the correct reading of the statute is one in which a deductible is a "similar payment" to a copayment, but coinsurance is not.  Rather, coinsurance is the very type of partial coverage that Congress did not wish to exclude from reimbursement.  This interpretation gives meaning to all terms and provisions in the statute and is also consistent with the plain meaning of the terms: copayments and deductibles are fixed quantities which become known once insurance is purchased, while coinsurance is a variable quantity that becomes known only after medical expenses are incurred and is quintessentially partial coverage.  The Veterans Court and Ms. Wolfe urge that deductibles are similar to coinsurance for veterans who have health insurance plans with high deductibles, but there is no indication that Congress wished to distinguish high deductible plans from other plans (with lower deductibles) when determining the categories of payments excluded from reimbursement.

The legislative history, though sparse, also supports a reading that deductibles were intentionally excluded from reimbursement as a "similar payment," but coinsurance was not.  When the amendment to § 1725 was first under

consideration, the House bill simply struck "or in part" from the third-party provision at § 1725(b)(3)(C). H.R. 5888, 110th Cong. § 1(a) (2008). In a prepared statement, the VA noted that it did not support the amendment as drafted because it "could be interpreted to require that VA pay any copayments the veteran owes to the third party." *Hearing Before the Subcomm. on Health of the H. Comm. on Veterans Affs.*, 110th Cong. 24 (2008). When the amendment was reintroduced in the next Congress, the new bill added the "copayment or similar payment" exclusion now in the statute. H.R. 1377, 111th Cong. § 1(b) (as introduced Mar. 6, 2009). The VA stated that it now supported the bill and understood the VA's financial liability to "exclud[e] copayment or deductible amounts owed by the veteran." *Hearing Before the Subcomm. on Health of the H. Comm. on Veterans Affs.*, 111th Cong. 50 (2009). There was no mention of coinsurance. Given Congress's concern with the VA's views as to the appropriate scope of the legislation, the VA's input was significant. H.R. Rep. No. 111-55, at 3 (2009) ("In addition, in response to the concerns put forth by the VA last Congress, [the bill] would clarify the reimbursement responsibilities of the VA."). In sum, the legislative history supports that Congress intended "similar payments" to include deductibles but not coinsurance. [3]

Under the correct construction of the statute, there is a "clear and indisputable" right to relief with respect to

---

[3]    The Veterans Court relied on a colloquy between Representative Miller and a subcommittee staff member from the 2008 legislative hearing as evidence of Congress's intent that VA reimburse deductibles. J.A. 5 n.10. However, the bill at the time did not contain the "copayment or similar payment" exclusion. Thus, even if this exchange between a congressman and a committee staffer could have any significance, it does not show what Congress intended to exclude in a provision that only came into existence nearly a year later.

coinsurance but not deductibles.[4]  We turn to the question whether mandamus was available with respect to coinsurance.

## II

It is well established that mandamus is unavailable when there is an adequate remedy by appeal.  In *Bankers Life*, the petitioner sought a writ of mandamus to vacate and set aside a district court's order of severance and transfer on the ground of improper venue, contending that mandamus was appropriate in part because the interlocutory order could be reviewed on appeal from final judgment in the case only after "needless expense, hardship and judicial inconvenience."  346 U.S. at 381–82.  The Supreme Court rejected this argument, explaining that "the extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial, and whatever may be done without the writ may not be done with it."  *Id.* at 383 (citing *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947); *U.S. Alkali Export Ass'n v. United States,* 325 U.S. 196, 202–03 (1945); *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 31 (1943); *Ex parte Rowland*, 104 U.S. 604, 617 (1882)).  It further explained that mandamus "should be resorted to only where appeal is a clearly inadequate remedy."  *Id.* at 384–85 (quoting *Fahey*, 332 U.S. at 259–60).  Our court has applied *Bankers Life* in affirming the Veterans Court's denial of a mandamus petition in the context of a benefits decision.  *See Lamb v. Principi*, 284 F.3d 1378, 1384 (Fed. Cir. 2002); *see also Beasley*, 709 F.3d at 1159 (cautioning against "widespread use of the writ of mandamus as a substitute for the ordinary appeals process mandated by Congress").

---

[4]    Because we find that Congress's intent is clear in the statute, we do not address the Secretary's arguments regarding *Chevron* deference.  *See Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842–43 (1984).

Here, Ms. Wolfe had options for appeal that were adequate remedies.  When she petitioned for the writ, Ms. Wolfe was still pursuing her administrative appeal at the VA.  There has been no showing that this was an inadequate remedy.  To be sure, mandamus might be available if the appeals process were being unreasonably delayed, but that possibility is no help to Ms. Wolfe.  First, such a mandamus order could only compel action on the appeal.[5] It could not dictate a particular outcome.  *See Bankers Life*, 346 U.S. at 383 (mandamus does not function to "control the decision of the trial court"); *see also Kramer v. Wilkie*, 842 F. App'x 599, 604–05 (Fed. Cir. 2021) ("A writ of mandamus may not be used to compel an outcome-specific order.").  Second, as the Veterans Court dissent noted, Ms. Wolfe did "not contend that the Secretary is refusing to process her claim, unreasonably delaying its adjudication, or performing any other action that would prevent her dispute from making its way to" the Veterans Court.  J.A. 37–38.  If Ms. Wolfe continued to follow the appeals process prescribed in title 38, she would have received a Board decision appealable to the Veterans Court.

Ms. Wolfe notes the Veterans Court's finding that the administrative appeals process would have been "futile because the Board doesn't have jurisdiction to invalidate the regulation." J.A. 34.  We rejected this reasoning in *Ledford v. West*, 136 F.3d 776, 780 (Fed. Cir. 1998).  The fact that the Board could not address the issue does not mean that the appeals process is futile.  In considering an individual case, the Veterans Court and this court can consider a

---

[5]    *See Martin v. O'Rourke*, 891 F.3d 1338, 1343 (Fed. Cir. 2018) (citing *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984)); *Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017) (citing *Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998)) ("[T]he Veterans Court has the power to . . . order[] the Board to issue a final determination in a case where it had not already done so.").

regulation's validity.   38 U.S.C. §§ 7261(a)(3), 7292; *see, e.g.*, *Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993).  We additionally note that Ms. Wolfe could have petitioned this court (and still can) for review of the similar payments regulation pursuant to 38 U.S.C. § 502, and Ms. Wolfe has not alleged that this avenue is futile or subject to delay.  Indeed, the mandamus proceeding itself appears to constitute the very kind of non-case-specific review of the regulations that is vested exclusively in this court under § 502.  *See Preminger v. Sec'y of Veterans Affs.*, 632 F.3d 1345, 1352 (Fed. Cir. 2011).

Ms. Wolfe next contends that mandamus is available to ensure compliance with the Veterans Court's earlier decision in *Staab*.  The Veterans Court majority characterized *Staab* as "the definitive and authoritative interpretation of section 1725," J.A. 7, and Ms. Wolfe argues that the VA's departure from *Staab* constitutes "extraordinary misconduct" because *Staab* is "binding on the VA," Wolfe Br. at 26, 10.  There is no basis for these allegations, and both the Veterans Court majority and Ms. Wolfe misunderstand the situation.  Mandamus might be appropriate to ensure compliance with the judgment in an individual case, *see Clinton v. Goldsmith,* 526 U.S. 529, 536 (1999), but mandamus is not available to enforce the principle of stare decisis.  *Staab* did not afford equitable relief barring enforcement of the regulations and constitutes simply an unreviewed decision of the Veterans Court that is not binding on this court or on the government outside of that individual case except as a matter of stare decisis at the Veterans-Court level of review.[6]   Moreover, *Staab*

---

[6]   It is well-established that there is no affirmative estoppel against the government.  *See United States v. Mendoza,* 464 U.S. 154, 158 (1983) ("[N]onmutual offensive collateral estoppel is not to be extended to the United States."); *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.,* 260 F.3d 1365, 1373 (Fed. Cir. 2001) (rejecting

cannot be read to foreclose the VA, even at the Veterans Court level, from arguing for the validity of a different regulation than the one at issue in *Staab*.

Ms. Wolfe next argues that mandamus is available in aid of the Veterans Court's prospective jurisdiction because the VA, through supposed misrepresentations in various communications, has deterred individuals from pursuing their benefits claims and appeals. The Veterans Court similarly found that the VA's communications regarding entitlements under the similar payments regulation as well as the regulation itself create "a chilling effect" on would-be claimants. J.A. 17. The answer to this again is twofold. First, this cannot justify mandamus with respect to Ms. Wolfe herself; she was not deterred and filed an appeal with the VA.

Second, as to veterans who never filed claims, even assuming Ms. Wolfe could serve as the class representative, mandamus does not aid prospective jurisdiction where a party has not initiated any proceeding whatsoever. *See In re Tennant*, 359 F.3d 523, 530 (D.C. Cir. 2004) (mandamus unavailable where petitioner never initiated a proceeding with the agency because "a proceeding of *some* kind" that "might lead to an appeal" is a preliminary requirement to consider writ); *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1380 (Fed. Cir. 2021) (court has prospective jurisdiction only after petition filed with agency); *see also FTC v. Dean Foods Co.*, 384 U.S. 597, 599 (1966) (mandamus available because FTC initiated a proceeding); *see generally* 33 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8313 (2d ed.). We have no occasion to determine what forms of equitable

---

application of collateral estoppel against the VA because "the only effect of the [Veterans Court's earlier decisions] is as a matter of stare decisis").

relief might be available if the government inappropriately deterred potential claimants from pursuing their claims.

Ms. Wolfe additionally argues that "mandamus is proper to avoid delay in resolving important issues." Wolfe Br. at 62 (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 111 (1964); *In re Google LLC*, 949 F.3d 1338, 1341–42 (Fed. Cir. 2020)). But the cases she relies on involved situations where appeal was not an adequate remedy or where a special need arose due to conflicting district court decisions on a recurring issue, circumstances that are absent here.[7]

Ms. Wolfe finally argues that the writ was necessary to correct a clear abuse of discretion under *La Buy v. Howes Leather Co.*, 352 U.S. 249, 257–58 (1957).[8] Reprising her

---

[7] In *Schlagenhauf*, the petitioner alleged that a federal district court was without power to order the mental and physical examination of a defendant under Federal Rule of Civil Procedure 35. 379 U.S. at 110. Such liberty concerns, once violated, could not have been vindicated after the fact by appeal.

In *Google*, this court issued a writ ordering the district court to dismiss a case for lack of venue because it was unlikely that "these issues [would] be preserved and presented to this court through the regular appellate process." 949 F.3d at 1342–43. The *Google* court also noted "a significant number of district court decisions that [had] adopt[ed] conflicting views on the basic legal issues presented." *Id.* at 1342; *see also In re Volkswagen*, No. 22-108, slip op. at 5 (Fed. Cir. Mar. 9, 2022); *In re Micron*, 875 F.3d 1091, 1095 (Fed. Cir. 2017).

[8] *La Buy* involved a district court judge who referred antitrust cases for trial before a master despite being able to "dispose of the litigation with greater dispatch and less effort than anyone else" due to his "knowledge of the cases . . . [and] long experience in the antitrust field." 352 U.S. at 255–56. The Court held that the judge's referrals, which

arguments about *Staab*'s allegedly binding effect, as evidence of a clear abuse of discretion, Ms. Wolfe points to the VA's "errors" in communicating with veterans about their entitlement to reimbursement, overestimating the monetary impact of *Staab*, failing to correct outdated information on its website, and the VA's adopting "a unilateral moratorium on claim processing, an interim final rule that lacked good cause, a regulation that circumvented both the statute and *Staab*, its refusal to pay veterans like Ms. Wolfe, and ongoing misrepresentations." Wolfe Br. 47. Ms. Wolfe's argument is again founded on the flawed premise that *Staab* was the final word on the subject matter and that the VA somehow acted improperly in adopting a new regulation after *Staab*.

Because we conclude that mandamus was inappropriate, we need not and do not reach the issue of class certification.

## CONCLUSION

Mandamus was not available in this case because the petitioner did not have a clear and indisputable right with respect to deductibles and had other adequate legal remedies by appeal. We reverse the Veterans Court's grant of the petition for a writ of mandamus.

## **REVERSED**

### COSTS

No costs.

---

numbered eleven cases in six years, "amounted to little less than an abdication of the judicial function. . . ." *Id.* at 256, 258.