**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 23-3260

DOUGLAS REDWOOD, ET AL., PETITIONERS,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before GREENBERG, ALLEN, and FALVEY, *Judges.*

**O R D E R**

On May 31, 2023, Douglas Redwood, Terrance Fowler, James LePant, John Jelen, Kenneth Schmidt, and Steven Butler petitioned the Court on behalf of themselves and two proposed classes of VA claimants. About a month later, petitioners filed their required Request for Class Certification and Class Action (RCA). After petitioners filed their RCA, the Secretary responded to their petition and RCA. And petitioners then replied to the Secretary's response. We thus have all we need to consider the parties' merits dispute.

Petitioners argue that, as members of the class certified in *Wolfe v. Wilkie*, 32 Vet.App. 1 (2019) ("*Wolfe I*"), *reversed sub. nom. Wolfe v. McDonough*, 28 F.4th 1348 (Fed. Cir. 2022) ("*Wolfe II*), they have a right to a writ compelling VA to readjudicate their reimbursement claims.

The problem—which may be obvious from the citation above—is that our decision in *Wolfe I* was reversed by the Federal Circuit in *Wolfe II*. With *Wolfe I* being no more, we find that petitioners fail to show our reversed decision is the source of a clear and indisputable right that could justify awarding a writ of mandamus. We also find that petitioners fail to convince us that such a right can be found in *Wolfe II* or the Federal Circuit's decision in *Kimmel v. Sec'y of Veterans Affairs*, 2022 U.S. App. LEXIS 29615 (Fed. Cir. Oct. 25, 2022).

What's more, even assuming such a right, petitioners fail to show that VA has unreasonably delayed adjudicating their claims. Viewing the length of time in the context of litigation, the rule-making process, and competing interests in an overburdened VA system means that we can't find that petitioners claims have been stalled so as to warrant mandamus.

In short, we deny their petition without certifying a class.

**I. BACKGROUND**

In 38 U.S.C. § 1725, Congress required that in some cases, VA reimburse veterans for the costs of their emergency medical care at non-VA facilities. The question of how VA must handle reimbursement when a veteran has other coverage has led to much litigation in our Court and the Federal Circuit.

In *Wolfe I* and *Wolfe II*, this Court and the Federal Circuit laid out the history of Congressional and VA action in addressing when VA will reimburse veterans. We won't repeat that history in this decision. Instead, we offer a brief refresher on how we ended up here.

We start with *Staab v. McDonald*, 28 Vet.App. 50 (2016). In that decision we struck down part of VA's regulation implementing section 1725, holding that the regulation improperly excluded reimbursement for non-VA emergency medical care when a veteran had any insurance covering the service at issue.

Next came *Wolfe I*, where we addressed changes VA made to its regulation after *Staab*. As part of the new regulation, VA prohibited reimbursement for deductibles and coinsurance, reasoning that they were much like the copayment—a category excluded from reimbursement by Congress. *See* 38 C.F.R. § 17.1005(a)(5)(2018). Exercising our authority under the All Writs Act, we held that VA's new regulation flouted *Staab* and that deductibles and coinsurance are not similar to copayments. *Wolfe*, 32 Vet.App. at 35.

We also certified a class of "[a]ll claimants whose claims for reimbursement of emergency medical expenses incurred at non-VA facilities VA has already denied or will deny, in whole or in part, on the ground that the expenses are part of the deductible or coinsurance payments for which the veteran was responsible." *Id*. at 34. And we ordered VA to readjudicate the claims of the class members. *Id*. at 41.

After we denied a stay pending appeal, the Secretary eventually appealed the merits of our decision to the Federal Circuit. This brings us to *Wolfe II*. In reviewing our decision, the Federal Circuit concluded that "[u]nder the correct construction of the statute, there is a 'clear and indisputable' right to relief with respect to coinsurance but not deductibles." *Wolfe*, 28 F.4th at 1357. Even so, the Federal Circuit held that "[m]andamus was not available in this case because the petitioner did not have a clear and indisputable right with respect to deductibles and had other adequate legal remedies by appeal." *Id*. at 1360. And so, the Federal Circuit "reverse[d] . . . [this] Court's grant of the petition for a writ of mandamus." *Id*.

Following *Wolfe II* came the *Kimmel* litigation. In that case the Federal Circuit held that VA's exclusion of coinsurance reimbursement was invalid and ordered VA to amend its regulations within 120 days to allow for the payment of coinsurance. *Kimmel*, 2022 U.S. App. LEXIS 29615.

As ordered, VA adopted new regulations. And as part of these changes, VA added a provision in 38 C.F.R. § 17.1004(f) that would allow those claimants affected by the *Staab*, *Wolfe,* and *Kimmel* litigation "an opportunity to file new claims for payment or reimbursement of emergency treatment costs incurred between February 1, 2010, and more than 90 days before February 22, 2023 . . . ." 88 Fed. Reg. 10,835, 10,837 (2023). This new regulation gives veterans a year from February 22, 2023, to file such claims.

This brings us to this litigation. Petitioners would like us to use the All Writs Act, in conjunction with Rules 22 and 23 of the Court's Rules of Practice and Procedure, to certify two classes made up of *Wolfe I* class members with one or more reimbursement claims covered by our *Wolfe I* decision and order that VA finish readjudicating their claims. Petitioners differentiate their

classes based on whether VA has acted to help them develop their claims. But the common theme between the two is that the classes are made up of *Wolfe I* class members who have not received a decision ordered by us in that case.

## II. ANALYSIS

### A.

Like other courts created by Congress, our jurisdiction is limited to the jurisdiction granted by Congress. *See Skaar v. Wilkie*, 32 Vet.App. 156, 180 (2019) (en banc order); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("'Courts created by statute can have no jurisdiction but such as the statute confers.'" (quoting *Sheldon v. Sill*, 49 U.S. 441, 449 (1850))). In our case, that means reviewing decisions of the Board of Veterans' Appeals. 38 U.S.C. § 7252(a). But in the All Writs Act, Congress also empowered courts to issue writs in aid of that statutory jurisdiction. *See* 28 U.S.C. § 1651(a). This authority is not a separate source of jurisdiction. Instead, it can help fill gaps in our appellate jurisdiction when, absent a writ, our prospective jurisdiction would be frustrated. *Love v. McDonough*, 35 Vet.App. 336, 342 (2022); *see also Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (noting that the "function of mandamus in aid of appellate jurisdiction is to remove obstacles to appeal").

To this end, this Court has issued writs of mandamus when VA's delay or inaction meant that a petitioner was at risk of never getting the decision needed to appeal to this Court. *See Godsey v. Wilkie*, 31 Vet.App. 207 (2019). At its core, that is the allegation petitioners make today—they argue that VA has refused, or at minimum, unreasonably delayed, deciding their reimbursement claims.

When deciding whether to issue a writ of mandamus, our inquiry is governed by three factors: (1) the petitioner must show a lack of other adequate ways to obtain relief, thus ensuring that the writ is not used to replace the appeals process; (2) the petitioner must show a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that issuing the writ is warranted. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004).

And, if we are dealing with allegations of delay, our consideration also is guided by the six "*TRAC* factors." *Martin v. O'Rourke*, 891 F.3d 1338, 1344 (Fed. Cir. 2008) (citing *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) (*TRAC*)). Those factors are:

> (1) The time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find "any impropriety lurking behind agency lassitude" in order to hold that agency action is unreasonably delayed.

3

750 F.2d at 80 (citations omitted).

B.

With these factors in mind, we turn to the petitioners' request. And, as we explain, we find that petitioners fail to convince us that issuing a writ is warranted.

To start, it is questionable whether petitioners have met the first requirement for mandamus. At the heart of petitioners' dispute with VA is that petitioners believe VA must adjudicate their reimbursement claims and do so to cover the period stretching to the *Wolfe* class. The trouble is, VA has a regulation and a process for that.

Under 38 C.F.R. § 17.1004(f), petitioners can apply and have VA decide their reimbursement claims stretching as far back as February 1, 2010. Nothing in the record tells us petitioners have done so. Thus, it is hard not to conclude that petitioners have failed to exhaust their remedies with VA and that they have a readily available alternative to get the relief they want.

That said, the issue is not quite so cut and dry. Petitioners argue that our decision in *Wolfe I* required VA to readjudicate their claims. It didn't require them to reapply. And because VA hasn't finished their claims (and does not intend to do so absent an application), they reason that their only remedy is to ask this Court for a writ compelling VA to decide those claims.

The problem with this line of reasoning is that whatever we may have required in *Wolfe I*, the Federal Circuit reversed that decision in *Wolfe II*. The Federal Circuit held that "[m]andamus was not available in this case because the petitioner did not have a clear and indisputable right with respect to deductibles and had other adequate legal remedies by appeal." *Wolfe*, 28 F.4th at 1360. And so, the Federal Circuit "reverse[d] . . . [this] Court's grant of the petition for a writ of mandamus." *Id*.

Petitioners don't dispute that *Wolfe II* led to a reversal. Instead, they offer two arguments for why that fact doesn't absolve VA of having to issue them a decision. First, they point out that the Federal Circuit also held that the *Wolfe* class members had a clear and indisputable right to reimbursement for coinsurance. *Wolfe*, 28 F.4th at 1357. But this part of the Federal Circuit's decision doesn't help petitioners here.

This is because that part of the Federal Circuit's analysis did not deal with whether VA had to readjudicate claims. Instead, it focused on whether, for purposes of the AWA, the statute gave Ms. Wolfe a clear and indisputable right to reimbursement of coinsurance. *Id*. To be sure, the Federal Circuit found that she did. But the court did not hold that she had a right to have VA readjudicate a case under that legal rule. *Id*. And the ultimate result in *Wolfe II* weighs firmly against petitioners.

Recall that the Federal Circuit held that mandamus was unwarranted because the VA appellate process provided an alternate avenue of relief. *Id*. at 1360. Thus, if anything, *Wolfe II* counsels against the result petitioners want here—a right to readjudication of claims built on a writ of mandamus. Even as the Federal Circuit agreed that Ms. Wolfe would have a right to

4

reimbursement of coinsurance, it required her to go through the full claims process to get that relief; it did not allow for judicial intervention to speed things along, at least not without unreasonable delay, a question to which we turn in a moment. Thus, whatever *Wolfe II* said about VA's regulation and the ultimate legal question of how VA must decide reimbursement claims, it did not establish a right to readjudication of such claims. At minimum, it did not establish one that is clear and indisputable enough to support a writ.

C.

This brings us to petitioners' second argument. They point out that during the *Wolfe I* litigation, we denied VA's request for a stay. Thus, VA began readjudicating claims and notified petitioners and the putative class members that VA would decide their claims as ordered by this Court. Petitioners stress that, in its communication, VA told claimants they did not need to do anything to trigger readjudication. And so, petitioners reason that *Wolfe I* created their pending claims and VA must now finish deciding them.

We are not convinced. True, we did not issue a stay. But we can't accept petitioners' argument that even though a higher court said *Wolfe I* was wrong, VA must keep complying with it. After all, the requirement to act in the *Wolfe* class stemmed from our decision in *Wolfe I*. The Federal Circuit reversed that decision. VA won. It cannot be that despite winning that case, VA now has to comply with the reversed decision. Petitioners' "heads I win, tails you lose" approach to the law would make appeals pointless. It would mean that any time this Court refuses to stay the effect of a decision pending appeal, VA would be bound by our decision even if a higher court found that decision to be incorrect.

But that is not the law. Generally, reversal by a higher court erases the opinion and judgment of the lower court. *See Kaplan v. Joseph*, 125 F.2d 602, 606 (7th Cir. 1942); *see also Keller v. Hall*, 111 F.2d 129, 131 (9th Cir. 1940) ("[T]he judgment theretofore rendered in the case, after it was reversed, was without any validity, force, or effect."). Put differently, while "[a] stay halts the effectiveness of the judgment[,] . . . a reversal . . . obviously entirely overturn[s] the judgment as improperly granted." *Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, No. 2009-1427, 2009 WL 7365766, at *1 (Fed. Cir. Aug. 13, 2009) (Moore, J., concurring in the denial of reconsideration). Thus, with *Wolfe II* reversing *Wolfe I*, petitioners can't rely on the relief we ordered in that reversed decision to establish a clear and indisputable right. It is no more.

Even if the fact that VA began readjudicating some claims under *Wolfe I* had some legal significance, we cannot conclude that whatever remains of that decision gives petitioners the sort of clear and indisputable right they need to have for us to issue a writ of mandamus. Put differently, we don't need to shut the door on the possibility that *Wolfe I* may sway how VA decides cases from claimants who seek reimbursement—that's simply not a decision we need to make here. Our decision is resolved on the straightforward idea that a reversed court decision does not create a clear and indisputable right to relief.

D.

If *Wolfe I* doesn't give petitioners the right to have VA readjduciate their claims, can that right be found anywhere else? We don't think so. At least, petitioners have not made such a case. Neither *Wolfe II* nor *Kimmel* required VA to readjduciate claims. Thus, we can't conclude they create the kind of clear and indisputable right necessary for a writ. That said, petitioners have not really pressed the issue, and we don't explore it in enough depth to meaningfully foreclose future arguments about this issue.

That's because even if we assume that between *Wolfe II* and *Kimmel* there is some right to have VA adjudicate the claim under the interpretation laid out in those cases, petitioners fail to show that a writ is appropriate. First, recall that the VA claims process already allows them to apply to VA for such an adjudication and, if they receive an adverse decision, to initiate an appeal to the Board.

Putting that aside, we don't find any delay here unreasonable. Mandate in *Wolfe II* issued in May 2022. That same month— a few days before the entry of mandate—the *Kimmel* litigation began at the Federal Circuit. It ended in December 2022, with VA having to issue new regulations. And, as ordered, VA issued those regulations with a final effective date of April 24, 2023. *See* 88 Fed. Reg. 10,835. About a month after the regulations became effective, petitioners brought their case to this Court.

What then is the delay? Counting from when *Wolfe II* became final, petitioners waited a year before coming to this Court and roughly 6 more months have passed since then. But that time can't really be called VA delay. Before *Wolfe II* was finished, VA was litigating the status of how it should process reimbursement claims. Once *Kimmel* finished, VA had to issue regulations—we won't fault VA for not adjudicating cases while developing regulations, especially given the complex procedural history that led to the adoption of those regulations. Or at least, we won't conclude such a wait is unreasonable in the context of the litigation that led to the proceeding before us today. This leaves us with the effective date of the regulation as our reference point, and an allegation of delay that is either 1 month or a little over 6 months, depending on if we stop our count with the filing of the petition or extend it through while we waited for briefing and to make our decision. In any case, such a length of time does not warrant a writ no matter how we weigh the various *TRAC* factors.

Half a year with new regulations and the lack of a clear mandate to act does not fail the rule of reason. This is particularly true when Congress did not impose a deadline on VA to act. *See TRAC*, 750 F.2d at 80. Although the third and fifth *TRAC* factors generally favor VA claimants, it is also difficult to overlook that nearly all of VA's competing tasks involve matters of health and human welfare. If we tell VA to prioritize claims from these petitioners, that means VA must spend less time on other claims. This is a particularly difficult calculus, as VA is dealing with claims from veterans seeking service connection, access to healthcare, and, as in petitioners' case, reimbursement of healthcare expenses. Ultimately, even if we find the third and fifth *TRAC* factors weigh firmly in petitioners' favor, the remaining ones lead us to conclude that the delay petitioners have experienced is not unreasonable and that a writ is unwarranted.

This holds true even if we consider the period stretching back to *Wolfe II*. A delay of adjudication with pending litigation and after VA won *Wolfe II* does not strike us as unreasonable given the competing interests and limited resources VA must balance. *See Martin*, 891 F.3d at 1347 (permitting the Court to "take account of the practical realities of the burdened veterans' benefits system").

E.

This then brings us to today. As it stands, VA says that, unless claimants apply for reimbursement, it is not going to process their claims. The question for us isn't whether such a decision is morally right or equitable. Instead, our job is to figure out if petitioners have a clear and indisputable right to have VA adjudicate their claims absent a new application. Or to be more specific, it is petitioners' job to convince us they have such a clear and indisputable right. *Love*, 35 Vet.App. at 342. This is something they haven't done.

In the end, we simply see no way to grant the relief petitioners request. VA has a regulation that can provide them the relief they want. Even if that were not the case, *Wolfe I* was reversed by *Wolfe II*. Thus, *Wolfe I* doesn't grant them the right to readjudication they claim it does. Nor have petitioners made the case that such a right can be found in *Wolfe II* or *Kimmel*. And even if we assume such a right is there, the time that has elapsed since those decisions have issued doesn't lead us to conclude that there has been unreasonable delay under the TRAC factors.

In an effort to dispel potential uncertainty faced by the former *Wolfe I* class members after *Wolfe II,* we note petitioners' awareness that they can apply for reimbursement under 38 C.F.R. § 17.1004(f), and we strongly encourage petitioners' counsel to make use of the contact information it received from VA in 2020 to inform their remaining clients, members of the *Wolfe I* class, of § 17.1004(f) and its impending deadline. These veterans have the right to apply for relief, and nothing would prevent counsel from using the information at their disposal to inform clients of their continuing rights under law. While we cannot take further action with respect to the *Wolfe I* litigation or order VA to readjudicate these claims, the law as it stands today provides for the adjudication of the reimbursement claims that veterans in this litigation have long sought.

### III. CONCLUSION

In short, we deny petitioners' request for a writ. We will also deny petitioners' request for class certification. We see no benefit to certifying a class only to then deny a writ to the whole class. And the Secretary—the only party who could benefit from such a decision—has not asked us to take such an action. We will also deny petitioners' pending motion for a production of documents from VA. More facts won't change the law. And the law is not in petitioners' favor. The right they invoke is not in *Wolfe I, Wolfe II,* or *Kimmel*. Even if it were, there is no unreasonable delay under the circumstances.

Based on the above, it is

ORDERED that the petitioners' May 31, 2023, petition is DENIED. It is also

ORDERED that the petitioners' June 30, 2023, RCA is DENIED. It is also

7

ORDERED that the petitioners' October 23, 2023, motion is DENIED.

DATED: December 6, 2023                                                                PER CURIAM.