# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-1323

CHARLES J. LOVE, JR., PETITIONER,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before MEREDITH, FALVEY, and LAURER, *Judges*.

## O R D E R

On March 2, 2021, Army veteran Charles J. Love, Jr., through counsel, petitioned the Court for extraordinary relief in the nature of a writ of mandamus. Mr. Love, whose 100% rating for prostate cancer was discontinued and replaced with a new 20% rating for prostate cancer residuals, argues that the Secretary may not implement that discontinuance until all appeals have been exhausted. He asks the Court to order the Secretary "to cease unlawfully withholding disability compensation" and "to pay him all amounts due consistent with [his] pre-reduction rating evaluation until his challenge to the reduction has run its course." Petition (Pet.) at 1. Because 38 U.S.C. § 7252(a) provides our sole source of jurisdiction and the petitioner has not shown that a writ would be in aid of that jurisdiction, we will dismiss the petition for a writ of mandamus.

## I. BACKGROUND

Mr. Love served on active duty from January 1968 to March 1971. Pet., Exhibit (Ex.) 1 at Appendix (App.) 2. He is service connected for prostate cancer and was rated 100% disabled. Pet., Ex. 1 at App. 4, Ex. 5 at App. 24; *see* 38 C.F.R. § 4.115b, Diagnostic Code (DC) 7528 (2021). In February 2019, the VA regional office (RO) proposed to "reduce" Mr. Love's evaluation for prostate cancer, status post radical prostatectomy, from 100% to 20%, and to discontinue special monthly compensation (SMC) based on the housebound criteria.[1] Pet., Ex. 1 at App. 2-5. On

---

[1] The note accompanying DC 7528 provides that, 6 months after treatment for prostate cancer, VA must provide an examination and any change in the 100% rating must be evaluated "subject to the provisions of § 3.105(e) of this chapter." § 4.115b. Section 3.105(e) states that when "a reduction or discontinuance of compensation payments" is considered, the beneficiary

> will be given 60 days for the presentation of additional evidence to show that compensation payments should be continued at their present level . . . . [and,] if additional evidence is not received within that period, final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which a 60–day period from the date of notice to the beneficiary of the final rating action expires.

38 C.F.R. § 3.105(e) (2021). This Court's recent decision in *Foster v. McDonough* characterizes the change in ratings under DC 7528 not as a "rating reduction" but as a "discontinuance" of the 100% prostate cancer rating and a grant of a prostate cancer residual rating. 34 Vet.App. 338, 345 (2021). Even so, the relevant law here does not distinguish between a "reduction" or a "discontinuance." *See, e.g.*, § 3.105(e) ("[A] rating proposing the *reduction or*

February 13, 2019, VA sent a letter notifying Mr. Love of the proposed change in rating that would reduce his monthly payments from $3,530.47 to $3,165.70. Secretary's (Sec'y's) Response (Resp.), Attachment (Attach.) A at 1-3. He was informed that he had 60 days to submit additional evidence and 30 days to seek a hearing to contest the change. *Id*. at 2; *see* § 3.105(e), (i). On April 3, 2019, Mr. Love challenged the proposed change, arguing that VA had not complied with 38 C.F.R. § 3.344(a). Pet., Ex. 2 at App. 7-10.

In September 2019, the RO issued a decision that discontinued the 100% prostate cancer rating and SMC, and granted a 20% rating for prostate cancer residuals, effective December 1, 2019. Pet., Ex. 3 at App. 12-15. In October 2019, VA sent Mr. Love a letter notifying him of the RO's decision. Sec'y's Resp., Attach. B. In December 2019, Mr. Love filed a Notice of Disagreement and requested direct review. Pet., Ex. 5 at App. 22-31. In December 2020, the Board of Veterans' Appeals decided that the discontinuance of the 100% rating and SMC at the housebound rate, effective December 1, 2019, was proper. Pet., Ex. 6 at App. 37-50. Mr. Love appealed to this Court in February 2021, and his appeal is pending as *Love v. McDonough*, U.S. Vet. App. No. 21-1265 (Notice of Appeal filed Feb. 26, 2021).

On March 2, 2021, Mr. Love petitioned for extraordinary relief, arguing that VA may not decrease his payments until his appeals are exhausted and that thus the Secretary is unlawfully withholding payment in the pre-discontinuance amount. Pet. at 1-2. On October 22, 2021, the Court heard oral arguments, and the parties later submitted supplemental briefing.

## II. ARGUMENTS

In his petition for a writ of mandamus, Mr. Love asks this Court to find that the Secretary's reduction in benefits was unlawfully premature and order the Secretary to resume payment in the pre-discontinuance amount until his appeals are exhausted. Pet. at 2. He advances three grounds for this Court to exercise its authority to grant extraordinary relief. First, he argues that the Secretary's action (refusing to continue payment in the pre-discontinuance amount) has precluded a future appeal of any potential overpayment dispute, thereby thwarting this Court's prospective jurisdiction under 38 U.S.C. § 7252(a) and warranting a writ in aid of our jurisdiction under the All Writs Act (AWA). Pet. at 11, 14; *see* 28 U.S.C. § 1651(a). Second, he argues that, having "opened the jurisdictional door" with the AWA, 38 U.S.C. § 7261(a)(2) authorizes this Court to "compel action of the Secretary unlawfully withheld." Pet. at 12 & n.1; Petitioner's (Pet'r's) Supplemental (Suppl.) Resp. at 8. Third, he argues that this Court has jurisdiction and may issue a writ "in aid of Federal Circuit jurisdiction" based on section 7252(c). Pet. at 3-11; Pet'r's Reply at 2-7.

The Secretary responds that Mr. Love is not entitled to a writ of mandamus because the ordinary appeals process provides him with adequate alternative means to obtain his requested relief. Sec'y's Resp. at 11-17. He argues that the Secretary's action to implement a discontinuance is either a ministerial act that flows from that discontinuance decision, and thus not a separate decision under 38 U.S.C. § 511, Sec'y's Suppl. Resp. at 2-3, or a separate question that falls under

---

*discontinuance* will be prepared.") (emphasis added). Although the parties refer to "reduction" and "discontinuance" interchangeably, we will use "discontinuance" to describe the VA action.

2

a law that affects the provision of benefits such that Mr. Love would be entitled to a decision on the matter if he had appealed the effective date of the discontinuance, *id*. at 3-5. In either case, the Secretary maintains that issuance of a writ is unwarranted because Mr. Love has launched no action before the Agency to challenge the implementation date nor has he requested an appealable decision. *Id*. at 5-7. The Secretary also argues that section 7252(c) is not an independent source of jurisdiction for the Court and that this matter falls outside our only statutory source of jurisdiction in section 7252(a). Sec'y's Resp. at 4-11.

## III. ANALYSIS

For the reasons below, we reject Mr. Love's arguments and find that extraordinary relief would not be in aid of our jurisdiction.

### A. The Court's Jurisdiction & AWA Authority

This Court is a statutory creation, 38 U.S.C. § 7251, and thus we can have no jurisdiction beyond what Congress has conferred by statute, *Skaar v. Wilkie*, 32 Vet.App. 156, 180 (2019) (en banc order); *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("'Courts created by statute can have no jurisdiction but such as the statute confers.'" (quoting *Sheldon v. Sill*, 49 U.S. 441, 449 (1850))). If a matter does not fall within our statutory jurisdiction, then we cannot address that matter.

This Court has only one source of jurisdiction: 38 U.S.C. § 7252(a). *Skaar*, 32 Vet.App. at 180. That provision grants us the "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." § 7252(a). Thus, "a final Board decision operates as the jurisdictional 'trigger' that gives us the authority to hear a particular appeal." *Skaar*, 32 Vet.App. at 180; *see Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998).

This matter is not before the Court on appeal from a final Board decision, and Mr. Love does not argue that it is. Thus, we have no basis to act according to our express statutory grant of jurisdiction. But under the AWA, we can act, even with no final Board decision, when it is in aid of our jurisdiction.

The AWA provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017) ("The [AWA] unquestionably applies in the Veterans Court."); *Gardner-Dickson v. Wilkie*, 33 Vet.App. 50, 54 (2020) (noting that the AWA gives this Court "the authority to hear petitions and issue writs in aid of our jurisdiction"), *aff'd sub nom. Gardner-Dickson v. McDonough*, No. 2021-1462, 2021 WL 5144367 (Fed. Cir. Nov. 5, 2021) (per curiam judgment). That includes the power of this Court to issue a writ of mandamus, *Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998), including in aid of our *prospective* jurisdiction, where "an alleged refusal to act would forever frustrate the ability of [this Court] to exercise its appellate jurisdiction," *Erspamer v. Derwinski*, 1 Vet.App. 3, 8 (1990); *see Gardner-Dickson*, 33 Vet.App. at 54-55; *see also Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (noting that the "function of mandamus in aid of appellate jurisdiction is to remove obstacles to appeal").

But a court cannot "assert jurisdiction on the basis of hypothetical scenarios" and prospective jurisdiction cannot depend on a "speculative chain of events." *Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 827 (D.C. Cir. 2007); *In re Tennant*, 359 F.3d 523, 529 (D.C. Cir. 2004) (establishing that, where no action has been taken that puts a matter on the path to a potential appeal, a future appeal remains hypothetical and so does not invoke a court's prospective jurisdiction); *see Wolfe v. McDonough*, 28 F.4th 1348, 1359 (Fed. Cir. 2022) (applying the standard from *In re Tennant* to a case appealed from this Court).

Thus, the threshold question for this Court is whether it has authority under the AWA to grant the relief Mr. Love requests. *See Erspamer*, 1 Vet.App. at 6. As the party invoking the Court's power, Mr. Love must show that we may exercise that power here. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Gardner-Dickson*, 33 Vet.App. at 55 ("The AWA 'permits federal courts to fill gaps in their judicial power where those gaps would thwart the otherwise proper exercise of their jurisdiction.'" (quoting *Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017))). And, "because the AWA 'is not an independent basis of jurisdiction, . . . the petitioner must initially show that the action sought to be corrected by mandamus is within this court's statutorily defined subject matter jurisdiction.'" *Gardner-Dickson*, 33 Vet.App. at 55 (quoting *Baker Perkins, Inc. v. Werner & Pfleiderer Corp.*, 710 F.2d 1561, 1565 (Fed. Cir. 1983)); *see Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) (noting that the AWA is a "residual source of authority").

### B. The Writ Sought Is Not in Aid of Our Jurisdiction

#### 1. Prospective Jurisdiction Through an Overpayment

Mr. Love argues that this Court has authority under the AWA to compel the Secretary to restore payments to their prior level. Pet. at 11. He argues that the Secretary, by implementing the rating discontinuance when he did, has precluded even "the possibility of an overpayment ever being created in connection with the rating reduction[] [t]hat, in turn, forecloses Mr. Love's ability to appeal any denial of overpayment relief that he seeks." *Id*. Mr. Love asserts that if an overpayment were created and the Secretary sought to collect it, then he would seek this overpayment relief. *Id*. He asks this Court to issue a writ under the AWA in aid of our prospective jurisdiction over some potential future appeal of overpayment proceedings. *Id*. at 11-12. Mr. Love's argument hinges on his assertion that the Secretary must make payments that could become overpayments. *See* Pet. at 11-12, 14; Pet'r's Suppl. Resp. at 7-8. Thus, he argues, the way to preserve this Court's jurisdiction is to order the Secretary to make payments in a particular amount, which in turn could cause an overpayment. Pet. at 2, 11.

As the party seeking a writ of mandamus, Mr. Love bears the burden of showing that we have the authority to issue a writ in his case. *See Gardner-Dickson*, 33 Vet.App. at 55 ("The burden of showing entitlement to a writ of mandamus rests with the petitioner."). We do not find that Mr. Love has shown that a writ would be in aid of our jurisdiction. *See id*. at 54-55. This is because he has not shown, by the argument presented here, that he is entitled to an overpayment. And if he is not entitled to an overpayment, he cannot show that preclusion of an overpayment would frustrate the future exercise of this Court's jurisdiction. *See Erspamer*, 1 Vet.App. at 8.

Should there be an overpayment of benefits to a claimant, the Secretary has a statutory duty to recoup the amount overpaid. 38 U.S.C. §§ 5314(a), 5316(a)(1). But a claimant may seek a waiver by establishing "that recovery [of the overpayment] would be against equity and good conscience." 38 U.S.C. § 5302(a). According to Mr. Love, this shows that "Congress has anticipated that, for a variety of reasons, there will be times when the Secretary *must* create an overpayment of benefits." Pet. at 14 (emphasis added). He argues that the Secretary, by acting to prevent an overpayment "foreclose[d] [his] ability to appeal any denial of overpayment relief that he seeks," which he could do as of right if there was a dispute over overpayments. *Id*. at 11. He argues that in this way the burden of loss rests on VA, and not on the veteran, who would otherwise be out the money unless he wins his appeal and the discontinuance is overturned. *Id*. at 18-20; Pet'r's Suppl. Resp. at 7-8.

The Secretary argues that Mr. Love's interpretation is incorrect and that nothing requires the creation of overpayments. Sec'y's Resp. at 15-16. He notes that overpayment relief is never a matter of right but granted only if warranted by "'equity and good conscience.'" *Id*. (quoting section 5302(a)). The Secretary argues that continuing payments in the pre-discontinuance amount in hopes of collecting the difference later would force VA to pay out money to which Mr. Love is no longer entitled, and thus would make VA a poor steward of taxpayers' money. *Id.*

Whether Congress has guaranteed recipients of VA benefits the right to an overpayment is a matter of statutory interpretation, and so we begin with the text of the statute. *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008). "The statute's plain meaning is derived from its text and its structure." *Id.*; *see Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007).

Here, we conclude that the petitioner has not shown that the plain meaning of the statutes he cites establishes a right to an overpayment. In that regard, although the statutes (subject to possible waiver) explicitly require the Secretary to *recoup* overpayments, *see* §§ 5314(a) ("the Secretary shall . . . deduct the amount of the indebtedness"), 5316(a)(1) ("[t]he Secretary shall take appropriate steps to authorize" suits "to recover any indebtedness"), they do not explicitly require the Secretary to *create* overpayments. And, although a payee may seek waiver of overpayment recovery and the Secretary may grant a waiver if the recovery is against "equity and good conscience," § 5302(a), that provision does not speak to whether an overpayment should exist in the first place. Thus, the plain text of the statutes does not establish a "right" to an overpayment.

Next, the petitioner has not explained how his assertion that Congress established a right to an overpayment aligns with the statutory scheme and the general purposes of chapter 53. For example, while the purpose of chapter 11 is to compensate disabled veterans under certain circumstances and establish the amount of that compensation, and though chapter 51, in part, sets forth the effective dates for the award of compensation, the start of payments, and the effective dates for reductions and discontinuances, *see, e.g.*, 38 U.S.C. §§ 1110, 1114, 5110, 5111, 5112,

the specific provisions in chapter 53 in the main appear to focus on controls to avoid waste, fraud, and abuse of government funds, *see, e.g.*, §§ 5301 (Nonassignability and exempt status of benefits); 5302 (allowing waiver of recovery only when it would be against "equity and good conscience"); 5303 (certain bars to benefits); 5311, 5313, 5313A, and 5313B (limiting or prohibiting payment under certain circumstances); 5314-5316 (authorizing collection of debts, including interest and associated administrative costs); and 5317-5318 (authorizing the Secretary to obtain income information and to terminate, deny, suspend, or reduce any benefit under certain circumstances). Without a more developed argument, the Court is not persuaded by Mr. Love's construction of sections 5302, 5314, and 5316 as requiring VA to purposely create an overpayment so that a recipient of VA benefits could potentially benefit from overpayment-related protections.

Likewise, the Secretary's regulation construing the statutory provisions does not explicitly require the Secretary to *create* overpayments.[2] Like the statute, the regulation prohibits collection of an overpayment if that would be against "equity and good conscience." 38 C.F.R. § 1.962 (2021); *compare* § 5302. But in the same regulation, the Secretary defines "overpayment" as "those benefit payments made to a designated living payee or beneficiary in excess of the amount due or to which such payee or beneficiary is entitled." 38 C.F.R. § 1.962. Mr. Love emphasizes the past-tense nature of the word "made" in the regulation, implying that overpayments can be made routinely. Pet. at 15. But the past-tense word "made" suggests a truism: if no payment has been made, then there can be no overpayment. The regulation does not speak in a prescriptive, future tense, e.g., "shall make" or "must make." Given that the regulation defines an overpayment as an amount that *exceeds* what a recipient is entitled to, this would suggest that overpayments are *not* meant to routinely happen.

Mr. Love essentially argues that, by creating procedures for the Secretary to collect overpayments and creating procedures by which veterans may seek waiver of overpayments, Congress intended that the Secretary at times *must* create overpayments just so that veterans would have the chance to seek overpayment waivers. Pet. at 14. But the petitioner has provided no support for his suggestion that the mere existence of these procedures mandates that they be made available in every situation. And, as indicated above, the plain text of the statutes does not command that the Secretary make payments in amounts that preserve the possibility of overpayments. Absent such a command and any developed argument that the overall structure of title 38 contemplates such a right, we are not persuaded that the petitioner has shown that the Secretary barred a possible overpayment, foreclosing Mr. Love's ability to appeal any potential denial of overpayment relief.[3]

Thus, we cannot say that the Secretary frustrates this Court's future jurisdiction when he precludes the possibility of overpayment. If there is an overpayment and the Secretary moves to

---

[2] To be clear, the Court is not suggesting that VA by regulation could create an entitlement to payments that are not authorized by Congress.

[3] Mr. Love also argues that the possible preclusion of a future overpayment violates fair process. Pet. at 19-20. But his argument regarding fair process rests on the same premise as his other arguments: that the existence of statutory overpayment protections means they must be made available to him. *Id.* at 20 ("[T]he Secretary's unilateral, unwanted withholding leaves Mr. Love unable to seek a waiver or deferral of overpayment . . . . [T]he Secretary's withholding to avoid a *possible* overpayment unfairly leaves Mr. Love bereft of [overpayment protections.]"). But Mr. Love has failed to establish that his premise, that the law entitles him to an overpayment, is correct, and so we find it unnecessary to address his fair process arguments based on that same premise.

collect it, then of course the waiver process in section 5302 would be available to a veteran. But because Mr. Love has not established an advance guarantee that there will be an overpayment, then whether there would ever be a dispute over overpayment relief that could come before this Court remains purely hypothetical. A hypothetical overpayment dispute would not come within our statutorily defined jurisdiction. *See Moms Against Mercury*, 483 F.3d at 827; *In re Tennant*, 359 F.3d at 529 (finding it inappropriate for a court to use its AWA "power solely on the basis that events *might* lead to a filing before an agency or lower court, which *might* lead to an appeal to this court"); *see also Wolfe*, 28 F.4th at 1359. Therefore, we conclude that granting Mr. Love's petition would not be "in aid of" our jurisdiction and permissible under the AWA.

## 2. Other Grounds for Exercise of Our AWA Authority

The AWA provides us with a "broad and flexible tool" that we may exercise when necessary to protect our jurisdiction. *Gardner-Dickson*, 33 Vet.App. at 57. Thus, if there are any other obstacles to our jurisdiction, we could act to remove them. *See Roche*, 319 U.S. at 26. Mr. Love argues that he cannot obtain judicial review of the issue at hand (the propriety of VA's payment of compensation at the post-discontinuance rate before he has exhausted his appellate rights) except by this petition because the payment of compensation is an action rather than a "decision" within the meaning of 38 U.S.C. § 511(a). Pet'r's Reply at 6; Pet'r's Suppl. Response at 2-5. But the parties agree, and we accept, that the issue Mr. Love raises about the implementation date for reduced payments can be presented to the Secretary and thus be put on the path to potential appeal to this Court. *See* Pet'r's Suppl. Resp. at 6-7; Sec'y's Suppl. Resp. at 3-5. If that path were blocked, our jurisdiction would need aid, and a writ could be the remedy to clear the path. *See* § 1651. But that would depend on the petitioner showing that the path was blocked, and we find that he has not done so. Thus, we find no other grounds to exercise our AWA authority.

As noted, this Court's authority under the AWA must be *in aid of* its jurisdiction; it cannot expand that jurisdiction. *Gardner-Dickson*, 33 Vet.App. at 55-56; *see Wolfe v. Wilkie*, 32 Vet.App. 1, 42 (2019) (Falvey, J., dissenting). And our jurisdiction is limited to review of final Board decisions. *Gardner-Dickson*, 33 Vet.App. at 56; *see* § 7252(a). Thus, our authority to issue a writ under the AWA must help remove obstacles to the ordinary process for review of veterans benefits decisions. *Gardner-Dickson*, 33 Vet.App. at 55-56; *see Roche*, 319 U.S. at 26. First in that process is a decision of the Secretary as meant in section 511(a).

Section 511 provides: "The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans," and that such decisions may be subject to review as provided in chapter 72 of title 38, that is, review by the Board and this Court. § 511(a), (b)(4); *see* §§ 7104(a), 7252(a).

Mr. Love argues that the Secretary's action—paying Mr. Love at the post-discontinuance rate—is not a "decision" under section 511(a), and thus he has no avenue to challenge the Secretary's action except by an extraordinary writ. Pet. at 16; Pet'r's Suppl. Resp. at 1, 2-6. The Secretary agrees that the action here is not a "decision" under the meaning of section 511. Sec'y's Suppl. Resp. at 2-3. Thus, the parties understand the Secretary's action to be a "ministerial act" to

give effect to the Secretary's discontinuance decision.[4] Pet'r's Suppl. Resp. at 5; Sec'y's Suppl. Resp. at 2.

The parties agree, however, that this ministerial act involves a question under a law that affects the provision of benefits. Pet'r's Suppl. Resp. at 6-8; Sec'y's Suppl. Resp. at 3-5; *see Bates v. Nicholson*, 398 F.3d 1355, 1359 (Fed. Cir. 2005) ("The ultimate question before us is whether this case arises 'under a law that affects the provision of benefits.'" (quoting section 511(a))); *accord Rosinski v. Shulkin*, 29 Vet.App. 183, 188 (2018) (per curiam order).

But they disagree as to which precise statutory enactment that question arises under. Pet'r's Suppl. Resp. at 6; Sec'y's Suppl. Resp. at 3-4. Mr. Love points to 38 U.S.C. §§ 1110 and 1114, which establish that, once the Secretary grants service connection for a disability and assigns a rating, the claimant is entitled to payment in the amount set out for that rating; Mr. Love emphasizes the monthly nature of the payments. Pet'r's Suppl. Resp. at 6-7. He also refers to 38 U.S.C. § 5302(a), which provides for a waiver of overpayments in some circumstances, contending that the Secretary's implementation of the discontinuance before he exhausts his appeal will forever bar his ability to seek a waiver. *Id.* at 6. The Secretary points to 38 U.S.C. § 5112(b)(6), the ultimate statutory authority for VA to discontinue a rating, as happened here, and he asserts that the proper implementation date of the discontinuance therefore arises under that statutory provision. Sec'y's Suppl. Resp. at 3-5.

Though they disagree on the statutory authority, the parties agree that the proper date to implement the discontinuance is a question under a law that affects the provision of benefits. Pet'r's Suppl. Resp. at 6-8; Sec'y's Suppl. Resp. at 3-5; *see Bates*, 398 F.3d at 1361; *see also Rosinski*, 29 Vet.App. at 188. The parties thus agree that the proper implementation date could be the subject of a decision under section 511(a), and they supply their preferred outcomes of that decision. Mr. Love argues that he is entitled to a decision by VA on the proper implementation date for the discontinuance of his 100% rating, but argues that this is beside the point; he argues that he has a right to be paid in the pre-discontinuance amount pending his appeals, that VA's failure to pay him at that rate is harmful because it deprives him of the alleged overpayment-related rights discussed above, and that, as a result, the ordinary appellate process is not adequate to provide the relief sought by this petition. Pet'r's Suppl. Resp. at 7-8.[5] The Secretary argues that the "implementation date" of a VA decision is synonymous with its "effective date," and nothing precludes Mr. Love from challenging the effective date of his discontinuance through the ordinary appellate process, but notes that he has not yet done so. Sec'y's Suppl. Resp. at 3-5.

---

[4] In the parties' view, the "decision" under section 511(a) was the September 2019 RO decision to discontinue the 100% rating for prostate cancer and assign a 20% rating for prostate cancer residuals, and to discontinue SMC, effective December 1, 2019. Pet., Ex. 3 at App. 12-15. That decision is not at issue but is the subject of an appeal pending under Docket No. 21-1265.

[5] Mr. Love argues that the Secretary is acting unlawfully because the Secretary is no longer paying him the amount specified for a 100% rating under section 1114. Pet. at 12-13; Pet'r's Suppl. Resp. at 7. The Court notes that, under the September 2019 RO decision, his prostate cancer residuals are rated as 20% disabling, effective December 1, 2019. Pet., Ex. 3 at App. 12-13. Mr. Love argues that the September 2019 RO decision is not final—and thus VA cannot implement it—until all of his appeals are exhausted. Pet. at 17-18; Pet'r's Suppl. Resp. at 7. Because this Court is dismissing this petition, we will not address the substance of that issue.

8

The Court finds it unnecessary to choose between sections 1110 and 1114 on the one hand, and section 5112(b)(6) on the other hand, because they all lead to the same conclusion: The proper implementation date of the discontinuance decision is a question under a law affecting the provision of benefits. *See* Pet'r's Suppl. Resp. at 6-8; Sec'y's Suppl. Resp. at 3-5. Although the *action* of paying a lower amount of benefits is not a "decision" that may be appealed, assignment of a date when that action will take place is an agency decision that could be appealed to the Board and then to this Court. *See Bates*, 398 F.3d at 1361; *see also Chisholm v. McDonald*, 28 Vet.App. 240, 243 (2016) (per curiam order) (finding that "decisions regarding access to claims files[, though not a direct decision on benefits,] are rendered pursuant to a law affecting the provision [of] veterans' benefits" and thus amenable to appeal to the Board and this Court).

By the same token, the Court finds it unnecessary under the circumstances to decide whether Mr. Love or the Secretary presents the correct understanding of "implementation" and "effective date." The parties' arguments in that regard essentially pertain to whether Mr. Love has the right to an overpayment, which we rejected above. Again, it is sufficient that the parties concede, and we so conclude, that the proper implementation date of the discontinuance decision generally is a matter that can be resolved by turning to the agency of original jurisdiction (AOJ) and thereby obtaining a decision under section 511(a). But because it is undisputed at this point that Mr. Love has initiated no proceedings at the AOJ that may implicate our prospective jurisdiction, *see* §§ 7104(a), 7252(a), mandamus would be improper, *see In re Tennant*, 359 F.3d at 529; *see also Wolfe*, 28 F.4th at 1359 (noting that "mandamus does not aid prospective jurisdiction where a party has not initiated any proceeding whatsoever").

Should Mr. Love seek a section 511(a) decision that could be appealed to the Board and then this Court, *see* §§ 7104(a), 7252(a), his ability to obtain a decision of the Secretary would involve our prospective jurisdiction. *See In re Tennant*, 359 F.3d at 529; *see also Wolfe*, 28 F.4th at 1359. But he has not requested that the Court compel VA to issue a section 511(a) decision regarding the proper date to implement the discontinuance, i.e., whether payments must continue in the pre-discontinuance amount, pending his appeal on the merits of the discontinuance. And, by extension, he has not shown that any action of the Secretary prevented him from seeking that decision. Instead, Mr. Love apparently wishes to circumvent the Agency process, requesting that the Court decide whether he is entitled to payments at the pre-discontinuance amount until he exhausts his appeals. *But see Wolfe*, 28 F.4th at 1357-58 ("[M]andamus . . . could only compel action on the appeal[;] [i]t could not dictate a particular outcome."). The ordinary appellate process provides a path to this Court, and if Mr. Love has not shown that VA has blocked his pursuit of a decision on that path, then issuing a writ would not be in aid of our jurisdiction, and so would be outside our authority under the AWA. *See Roche*, 319 U.S. at 26; *Gardner-Dickson*, 33 Vet.App. at 55-56; *see also Wolfe*, 32 Vet.App. at 42-43 (Falvey, J. dissenting). Thus, the Court cannot exercise its authority under the AWA to assess whether a writ is warranted here.

C. 38 U.S.C. § 7261(a)(2): Authority to Compel Action of the Secretary Unlawfully Withheld

Mr. Love also argues that "the Court *must* act under [section] 7261(a)(2) even if the statute that 'opens the jurisdictional door' here is the [AWA]." Pet. at 12 & n.1. Section 7261(a)(2) provides that this Court shall "compel action of the Secretary unlawfully withheld or unreasonably delayed." He argues that section 7261(a)(2) therefore requires this Court to issue a writ of

mandamus here to "compel an action of the Secretary unlawfully withheld," the "action" being payments in the pre-discontinuance amount. Pet. at 12. He further argues that section 7261(a)(2) "provides an ordinary-course basis to compel unlawfully withheld action." Pet. at 12 n.1. But he argues that, once this Court's AWA authority has been properly invoked, this Court may exercise "supplemental jurisdiction" akin to our chapter 72 authority, the scope of which is governed by section 7261. Pet. at 12. He then analogizes this Court's scope of review under section 7261(a)(2) to the scope of review afforded Article III courts under the Administrative Procedure Act (APA), 5 U.S.C. § 706(1), and argues that the Court must compel agency action unlawfully withheld, without any discretion. Pet. at 12-13 & n.2. He goes so far as to say that this mandate of section 7261(a)(2) negates the otherwise applicable standard that issuance of a writ of mandamus is always a matter of the issuing court's discretion. Pet. at 13 n.2; Pet'r's Reply at 8; *see Kerr v. U.S. Dist. Court*, 426 U.S. 394, 403 (1976) (noting that "issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed").

But as explained above, we find that the AWA's "jurisdictional door" is closed. That the writ be "in aid of" our jurisdiction or our prospective jurisdiction is the sine qua non of AWA authority. *See* § 1651(a); *Wolfe*, 28 F.4th at 1354; *Gardner-Dickson*, 33 Vet.App. at 54. Here, Mr. Love has not demonstrated, either by showing a right to an overpayment or that he cannot obtain a section 511(a) decision on the implementation issue, that this Court's jurisdiction is impeded. *See* III.B, *supra*. Simply put, our jurisdiction is not in need of aid, and therefore we have no authority under the AWA to issue a writ. Thus, there is no need to turn to section 7261 to determine our scope of action because we do not have jurisdiction under the AWA to act. Likewise, although Mr. Love argues that section 7261 relates to our "supplemental jurisdiction," Pet. at 12, there is nothing here to supplement. Whatever section 7261 would require of us in other cases, it has no role to play here.

Because we find that 38 U.S.C. § 7261 is inapplicable here, we need not address Mr. Love's argument that our scope of action under that section is analogous to the APA, 5 U.S.C. § 706(1). Likewise, we find no need to determine whether section 7261 affects the discretionary nature of mandamus as laid out in *Kerr*.

### D. Purported 38 U.S.C. § 7252(c) Jurisdiction

Mr. Love makes the novel argument that section 7252(c) is an independent grant of jurisdiction empowering this Court to act in aid of the Federal Circuit's jurisdiction.[6] As the party asserting jurisdiction, Mr. Love must show that this jurisdiction exists. *See McNutt*, 298 U.S. at 189. He fails.

When interpreting a statute, the Court must first look to its plain meaning. *Gardner*, 1 Vet.App. at 586-87. And "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory

---

[6] Mr. Love's counsel, John Niles, appears to have made this argument in several cases before the Court. *See, e.g.*, *Aumiller v. McDonough*, U.S. Vet. App. No. 21-3565 (submitted to a panel Sept. 16, 2021); *Furtick v. McDonough*, U.S. Vet. App. No. 20-4638 (Nov. 18, 2021, dismissed, mandate issued); *Johnson v. Tran*, No. 20-7918, 2021 WL 416449, at *5 (Vet. App. Feb. 8, 2021) (decided on other grounds). This is the first case to address the issue on the merits.

scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see Hornick v. Shinseki*, 24 Vet.App. 50, 51 (2010) ("The meaning of a statutory word or phrase cannot be determined in isolation, but must be drawn from the context in which it is used.").

As noted, "[w]e have only one source of jurisdiction: 38 U.S.C. § 7252." *Skaar*, 32 Vet.App. at 180. The statute, which is titled "Jurisdiction; finality of decisions," reads:

(a) The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals. The Secretary may not seek review of any such decision. The Court shall have power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate.

(b) Review in the Court shall be on the record of proceedings before the Secretary and the Board. The extent of the review shall be limited to the scope provided in section 7261 of this title. The Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule.

(c) Decisions by the Court are subject to review as provided in section 7292 of this title.

§ 7252(a)-(c).

A plain reading of this section shows that it contains a singular grant of jurisdiction in subsection (a), followed by limits on how and what we can review in subsection (b), with the statutory scheme rounded out by subsection (c) providing that this Court's decisions are subject to the Federal Circuit's appellate review as provided in section 7292. *See* 38 U.S.C. § 7292(a) ("After a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of a decision of the Court [of Appeals for Veterans Claims] . . . .").

Subsection (a) of section 7252 sets out our jurisdiction: "The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." Section 7292(c) has comparable language: "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction to review [certain legal matters in resolving appeals of decisions of the Court of Appeals for Veterans Claims]." Congress was explicit about jurisdiction in section 7252(a) and section 7292, setting up independent sources of jurisdiction for two different courts in relation to veterans' claims.

Yet Mr. Love would have us believe that Congress chose to be more cryptic in subsection (c) of section 7252, which does not use the word "jurisdiction." But "[i]f Congress had intended the court's jurisdiction to be broader than that conferred by [subsection] 7252[(a)], Congress would have expressed that intention legislatively." *Matter of Wick*, 40 F.3d 367, 373 (Fed. Cir. 1994).

In support of his argument that section 7252(c) is a separate grant of jurisdiction, Mr. Love argues that the language of section 7252(b), because it does not specify that it applies exclusively

to subsection (a), "applies to cases that are within this Court's jurisdiction on a basis *other* than [section] 7252(a)." Pet. at 5 (emphasis added). His only support for this is the fact that subsection (b) does not qualify the Court's review with the words "under subsection (a)." *Id*. But subsection (b)'s placement and the overall structure of section 7252 does not require qualifying language to understand its plain meaning. Subsection (b) limits the Court's jurisdiction, confining our review to the record before the Secretary and the Board and to the scope provided in section 7261, and forbidding review of the schedule of ratings for disabilities adopted by the Secretary. 38 U.S.C. § 7252(b). The Court's singular grant of jurisdiction is in subsection (a), giving this Court the power to "review decisions of the Board of Veterans' Appeals." 38 U.S.C. § 7252(a). That is the only "[r]eview in [this] Court," and thus the only "review" to which subsection (b) could apply.

To the extent that Mr. Love suggests that subsection (b) is itself a grant of jurisdiction, and thus by analogy suggests that subsection (c) is too, that contravenes the established interpretation that subsection (b) is not a grant of jurisdiction but limits the jurisdiction established in subsection (a). *See Larson v. McDonough*, 10 F.4th 1325, 1327 (Fed. Cir. 2021) ("Section 7252 establishes the exclusive jurisdiction of the Veterans Court to review decisions of the Board. However, the Veterans Court [has the limits to its jurisdiction found in section] 7252(b)."); *Ledford*, 136 F.3d at 779 ("The statute that confers jurisdiction upon the Court of [Appeals for Veterans Claims is] . . . 38 U.S.C. § 7252(a). Thus, the court's jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed [per] [section] 7252(b)."). If subsection (b) is not a grant of jurisdiction, that does not bode well for Mr. Love's argument that subsection (c) is a grant of jurisdiction.

References to section 7252(c) as jurisdictional do exist—but referring to the Federal Circuit's own jurisdiction, not this Court's jurisdiction. The Federal Circuit has noted that section 7252(c) complements its own grant of jurisdiction in section 7292. *See Stillwell v. Brown*, 46 F.3d 1111, 1113 (Fed. Cir. 1995) ("The boundaries of this limited jurisdictional grant are set out at 38 U.S.C. § 7292.") & *id*. at n.3 ("38 U.S.C. § 7252(c) provides that decisions by the Court of [Appeals for Veterans Claims] 'are subject to review as provided in [section] 7292 . . . .'"). Even courts outside the veterans appeals system refer to sections 7252(c) and 7292 in tandem as sources of Federal Circuit jurisdiction, not that of this Court. *See Bell v. Veterans Admin.*, 946 F. Supp. 479, 480 (N.D. Tex. 1996) (citing sections 7252(c) and 7292 for the proposition that the "United States Court of Appeals for the Federal Circuit has exclusive jurisdiction to review decisions of the Court of [Appeals for Veterans Claims]").

Mr. Love argues that such a construction of section 7252(c) would render it superfluous next to section 7292, Pet. at 4-5 (citing *Sharp v. United States*, 580 F.3d 1234, 1238 (Fed. Cir. 2009) ("[Courts] must give effect, if possible, to every clause and word of a statute and should avoid rendering any of the statutory text meaningless or as mere surplusage.") (quotations omitted)), and reduce subsection (c) to a "statutory heading." Pet'r's Reply at 3.

But a proper construction of subsection (c) does not reduce it to "mere surplusage" or a "statutory heading." Subsection (c) notes that our decisions are not necessarily final but subject to

Federal Circuit review; then, that court's jurisdiction is positively granted in section 7292. [7] § 7252(c). The two provisions work in tandem, tying the statutory scheme together by laying out that appeals come first to this Court and then to the Federal Circuit. *See Davis*, 489 U.S. at 809; *Hornick*, 24 Vet.App. at 51.

Mr. Love argues that the legislative history of section 7252 supports construing its provisions broadly to give as many opportunities for judicial review as possible to veterans. Pet. at 6-8. We note that "'[o]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the "plain meaning" of the statutory language.'" *Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992) (second alteration in original) (quoting *Garcia v. United States*, 469 U.S. 70, 75 (1984)). But here the petitioner has identified no conflict between the plain meaning and the legislative history. The Senate at first did not envision a separate veterans court, wanting Board decisions instead reviewed by the geographic Circuit Courts of Appeal; the Senate's legislative history cannot support any grant of jurisdiction to this Court when it did not even envision this Court's existence. *See* S. REP. NO. 100-418, at 17, 151 (1988). The House of Representatives envisioned a veterans court with broad jurisdiction "to consider all questions involving benefits under laws administered by the Veterans Administration [now Department of Veterans Affairs]." H. R. REP. NO. 100-963, pt. I, at 4, 62 (1988). But even this broad talk of "all questions involving benefits" still does not speak to whether this Court could somehow act in aid of Federal Circuit jurisdiction. Moreover, neither the House nor the Senate's proposals survived in the final version of the law. Ultimately, Congress created a separate veterans court, but without so wide a jurisdiction; the final form of the bill reads the same as the statute does today. Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, § 301, 102 Stat. 4105, 4113-14 (1988) ("Decisions by the Court are subject to review as provided in [section] 4092 [now section 7292] of this title."). Mr. Love has identified nothing in the legislative history that shows that Congress intended for us to have jurisdiction "in aid of" another court's jurisdiction, and thus the legislative history gives us no grounds to construe section 7252(c) as such a grant of jurisdiction.

Mr. Love's remaining arguments in favor of a "section 7252(c) jurisdiction" also fail. He argues that "'provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.'" Pet. at 9 (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220 n.9 (1991)). He argues that it would be more favorable to claimants to interpret section 7252(c) to provide another kind of judicial review for those claimants to pursue, and in this case to provide Mr. Love a means to "review the withholding of payments at the pre-reduction level while Mr. Love challenges the reduction." *Id.* As discussed above, *see* III.B.2, because the proper implementation date is a section 511(a) matter, it may be challenged through the same process as the underlying discontinuance decision. It must be remembered that the statutory scheme as it is already understood is favorable to claimants because not only is review of VA decisions by a court dedicated solely to veterans law available, but review of *that* review is available to the claimant. *See* §§ 7252(c), 7292.

---

[7] Indeed, section 7252's heading reads, "Jurisdiction; *finality of decisions*." 38 U.S.C. § 7252 (emphasis added). Although statutory headings cannot contravene the statutory text, they do serve as a reference guide for the statute's subject matter. *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947); *see United States v. Jac Natori Co.*, 108 F.3d 295, 299 (Fed. Cir. 1997).

Mr. Love also argues that a "'strong presumption favor[s] judicial review.'" Pet. at 9 (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 489 (2015) (stating that there is "a strong presumption favoring judicial review of administrative action" (quotations omitted)). Thus, he argues that this presumption should be attached to section 7252(c). Pet. at 9-10. But we find that the presumption of judicial review is inappropriate and unnecessary here. Refusing to apply the presumption would not leave veterans without judicial review—there is an explicit provision for judicial review (only of final Board decisions) in section 7252(a). This fact contrasts veterans law with areas with no specific congressional authorization of judicial review of any kind. The case he cites for the presumption of judicial review, *Mach Mining*, in fact readily demonstrates this distinction. There, the Supreme Court dealt with a situation in which a statute required an agency, the Equal Employment Opportunity Commission, to take certain action, but that requirement to act was not *explicitly* subject to judicial review in the same statute. 575 U.S. at 486-88; *see* 42 U.S.C. § 2000e-5. There, without the presumption favoring judicial review, "the Commission's compliance with the law would rest in the Commission's hands alone." 575 U.S. at 488. But here, there is no need to resort to a presumption to establish judicial review of VA decisions—that is explicitly provided for in section 7252(a). The situation here is unlike *Mach Mining* or any other case in which judicial review of agency action is not explicitly provided for by statute; matters here are not left in the agency's hands alone. And we need not rely on any presumption when Congress has explicitly provided for when and how this Court will exercise judicial review of agency action.

Mr. Love argues that judicial review must be presumed unless it is clear that Congress intended to preclude it. Pet. at 9. Although that proposition is correct, it does not mean that anything less than an explicit denial of judicial review in the statute will do. Limitations on judicial review are not only determined by the express language of a statute, "but also from the structure of the statutory scheme." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). Here, the statutory scheme shows that Congress has provided for judicial review of VA action, but only in a specific manner. First, judicial review can be done by this Court, but only of final Board decisions. § 7252(a). Then, the Federal Circuit can review decisions of this Court. § 7292. Those statutory provisions show that this Court and the Federal Circuit possess separate, distinct grants of jurisdiction. Absent from the statutory scheme is any provision by which this Court could somehow act in defense of the Federal Circuit's jurisdiction rather than its own. But within that scheme, the only statutory basis for judicial review by this Court is section 7252(a), in which Congress commands that we "shall have exclusive jurisdiction to review" final Board decisions. We cannot and will not add to our congressional marching orders.

Finally, Mr. Love argues that the fact that no prior cases decided by this Court have rested on this "[section] 7252(c) jurisdiction" is because "at most[,] as to [section] 7252(c), . . . [prior] claimants failed adequately to plead [section] 7252(c) jurisdiction." Pet'r's Reply at 5. But this is not because prior claimants somehow missed raising this argument; it is because section 7252(c) is *not* a source of jurisdiction for this Court independent of section 7252(a). Mr. Love is asking the Court to create a new kind of jurisdiction not authorized by statute and in aid of a *different* court's jurisdiction, no less. This is something we cannot do. *See Gardner-Dickson*, 33 Vet.App. at 56 ("We may not craft a judicial expansion of section 7252 to circumvent binding precedent or the statute itself.").

## E. Summary

In sum, Mr. Love has not shown that the Secretary's preclusion of the possibility of overpayment presents an obstacle to this Court's future jurisdiction, nor any other basis on which we could issue a writ under the AWA in aid of our jurisdiction. Without authority under the AWA, there is no need to turn to section 7261 to determine our scope of action. We also find that there is no separate jurisdiction under section 7252(c) allowing the Court to act in aid of the Federal Circuit's potential jurisdiction. There are thus no jurisdictional grounds for this Court to compel the Secretary to restore payments to the pre-discontinuance amount pending completion of Mr. Love's appeal.

## IV. CONCLUSION

On consideration of the above, it is

ORDERED that Mr. Love's March 2, 2021, petition is DISMISSED.

DATED: June 23, 2022                                    PER CURIAM.

15